IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT HANNA,                                    *

Plaintiff,                                       *

v.                                               *            Civil Action No. PX-21-684

WAYNE HILL, et al.,                              *

Defendants.                                      *
                                            ***

## MEMORANDUM OPINION

Plaintiff Robert Hanna, an inmate at the North Branch Correctional Institution in Cumberland, Maryland, filed this action pursuant to 42 U.S.C. § 1983 against Defendants Wayne Hill, C. Peters, J. Kehr, Nicholas Daniels, John Doe[1], and Dante Williams.  Defendants move to dismiss the Complaint or alternatively for summary judgment to be granted in their favor.  ECF No. 12.  Also pending are Hanna's Motion to Appoint Counsel (ECF Nos. 11, 15), as well as correspondence from Hanna construed as a Motion for Entry of Default (ECF No. 9) and a Motion for Discovery (ECF No. 10).  The Court has reviewed the pleadings and finds a hearing unnecessary.  *See* D. Md. Local R. 105.6.  For the reasons stated below, the Motion to Dismiss or, in the Alternative, for Summary Judgment, will be granted in part and denied in part; the Motion for Entry of Default will be denied; the Motions for Appointed Counsel will be granted; and the Motion for Discovery will be denied as premature.

### I.        Background

The parties have submitted evidence beyond the four corners of the Complaint, which the Court construes most favorably to Hanna as the non-moving party.  The Complaint concerns two

---

[1] Defendant John Doe has not been identified or served.  Because all claims against Doe will be dismissed, service is not necessary at this time.

instances of alleged excessive force that took place on October 8, 2019 at Western Correctional Institution ("WCI"), and on October 28, 2020 at Jessup Correctional Institution ("JCI"). For both, Hanna avers that correctional officers physically beat him while others failed to intervene, in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. ECF No. 1. Hanna separately maintains that certain Defendants violated his due process and First Amendment rights to petition for redress of grievances by bringing retaliatory rules violations against him. *Id.* The Court describes the record evidence for each incident below.

### A. October 8, 2019 Incident

On October 8, 2019, Hanna was in a holding cell preparing for transfer from WCI to JCI. ECF Nos. 1 at 2; 14-2; 12-5 at 28-29. Defendants Peters and Kehr, as members of the Special Operations Group ("SOG"), arrived to strip search Hanna. ECF No. 12-5 at 28-29. Hanna complied with the officers' instructions until Peters commanded Hanna to "bend over at the waist and spread his buttocks." ECF No. 12-5 at 28-29; *see also* ECF No. 14-2. Hanna refused. Instead, Hanna performed another search sequence to "drop, squat, and cough with [his] hands in the air."[2] ECF Nos. 1 at 3; 14-2 (Hanna Decl.). Hanna describes that as he was coming out of this position, "completely naked," Peters pushed him hard, causing him to fall. Peters next jumped on Hanna's back and started punching him in his face, head, and ribs with hard, close-fisted blows. ECF No. 1 at 3.

Peters presents a very different account. Peters attests that at the point Hanna had been ordered to bend over, Hanna turned toward Peters in "an aggressive manner," ECF Nos. 12-1 at 4;

---

[2] According to the Complaint, this alternative search technique is commonly employed, ECF No. 1 at 2. Defendants disagree. ECF No. 12-1 at 4; *see also* ECF No. 12-7 at 2.

12-5 at 28.  Peters, in response, wrapped his arms around Hanna "to gain control," causing both men to fall over.  ECF No. 12-5 at 28.  According to Peters, Hanna continued to resist, kicking and elbowing Peters in the face.  Peters, in turn, struck Hanna in the face and upper body.  ECF No. 12-5 at 28.  *See also* ECF No. 12-5 at 29 (Officer Kehr attesting that Peters "wrap[ped] his arms around the inmate's upper body and fell over the boxes and the toilet."); ECF No 12-4 at 20 (Officer Durst "heard a scuffle coming from one of the holding cells and someone saying 'stop resisting and to cuff up.'"); ECF No. 12-4 at 20.

Officers ultimately restrained Hanna and transported him to the medical unit for treatment.  ECF No. 12-5 at 28.  The treating nurse asked Hanna if he was injured, to which he replied, "yes I have injuries, they beat my head off the ground."  ECF No. 12-12 at 10.  The nurse noted "several abraised areas to the right side of [Hanna's] face" and a discolored area on his right shoulder.  *Id*.  Contemporaneous photographs depict injury to the right side of Hanna's forehead.  ECF No. 12-4 at 29-30.  Hanna also had a "frontal scalp hematoma," and presented with a headache, blurred vision in his right eye and lethargy.  He was diagnosed with a mild concussion.  ECF No. 12-12 at 13.

On the same day as the incident, Peters submitted a "notice of inmate rule violation," against Hanna and separate use of force reports.  ECF No. 12-4 at 8, 12.  Hanna was charged with several rules violations to include interfering with a search and disobeying a lawful order.  ECF. No. 12-5 at 16, 23.  On October 14, 2019, Hanna submitted a formal complaint against the officers in a Request for Administrative Remedy ("ARP"), alleging that he had been the victim of the officers' excessive force.  ECF No. 14-3 at 1-3.  Four days later, Hanna's rules violations were adjudicated.  He waived his appearance and admitted to both infractions.  ECF No. 12-5 at 15-17.

The ARP was also dismissed in favor of an internal affairs investigation ("IID") initiated at the prison.  ECF No. 14-3.

### B.  October 28, 2020 Incident

About a year later, Peters subjected Hanna to another strip search at a different facility, JCI.  This incident began with correction officers searching Hanna's cell.  ECF Nos. 12-10 at 2; 12-1 at 5.  Defendant Peters assisted with the search.  ECF Nos. 12-9 and 12-10 at 8.  Hanna expressed his desire to avoid Peters during the search, although other officers present attest that Hanna never made such a request.  ECF Nos. 14-2 at 3; 14-1 at 5; 12-9.  During the strip search, Peters punched Hanna in the head and face, even though Hanna was naked and defenseless. Hanna also attests that defendant Daniels joined Peters in punching Hanna.  ECF No. 1 at 5-6; *see also* ECF No. 14-2 at 3-4.

Peters, by contrast, again maintains that Hanna was the aggressor.  Peters more particularly describes that as the search began, Hanna pushed and attempted to punch Peters, and lunged toward Daniels.  ECF No. 12-10 at 25.  Daniels for his part insists that he was "forced" to hit Hanna with "closed fist strikes to his head in order to stop [Hanna's] active assaults."  *Id*. at 7.  A third officer, Sergeant Bair, attests that officers needed to take control of the search because Hanna refused to comply with orders, but Bair does not describe any of the men has having thrown any punches. *Id*.

After the officers restrained Hanna, they transported him to the medical unit for treatment. ECF No. 12-10 at 24.  The treating nurse observed "red bruising" on Hanna's body, a bruise on his face, and a small wound on his nose.  *Id*.  JCI next conducted its own use if force investigation that day and subsequently referred the matter for an internal investigation which focused on Peters. ECF Nos. 12-10; 12-13.  Nothing appears to have come of the investigation.

On the same day, October 28, 2020, Hanna was transferred to Northern Branch Correctional Institution ("NCBI"). ECF No. 12-3. On November 22, 2020, Hanna filed an ARP regarding the October 28, 2020 melee, asserting that Peters had attacked him without provocation and had falsified documents in connection with the subsequent investigation. ECF No. 12-14. This ARP was also dismissed, citing an ongoing IID investigation as grounds for dismissal. *Id*.

Officers Daniels and Peters also filed "adjustment reports" alleging that Hanna had committed several rule violations in connection with this incident. But because the prison did not provide Hanna with a video recording near the vicinity of the incident, the charges were dismissed. ECF Nos. 12-10 at 25; 12-16 at 3. The hearing officer particularly noted that the absence of the video recording hindered Hanna's ability to prepare an adequate defense to the allegations. ECF No. 12-16 at 3. Hanna thereafter filed suit in this case.

## II.    Standard of Review

Defendants move to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in their favor. Such motions implicate the court's discretion under Rule 12(d). *See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Hanna was placed on notice that defendants sought summary judgment and submitted his own record evidence for the Court's consideration.  ECF Nos. 13, 14-2, and 14-4.  Accordingly, the Court considers the sufficiency of the claims under the summary judgment standard.  *See, e.g., Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005).  Pursuant to Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Id*. (quoting Fed. R. Civ. P. 56(e)).  A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party.  *Anderson*, 477 U.S. at 249-50.

In reviewing a motion to dismiss, the Court accepts the well-pleaded allegations as true and in the light most favorable to the plaintiff.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'"  *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above a speculative level."  *Twombly*, 550 U.S. at 555.  "'[N]aked assertions' of

wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

Although pro se pleadings are construed generously to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009).

## IV.   Analysis

Defendants argue that summary judgment must be granted in their favor for several reasons. Defendants first attack Hanna's failure to exhaust his administrative remedies. Defendants alternatively argue that no record evidence supports Hanna's Eighth Amendment, First Amendment retaliation, and due process claims. Lastly, Defendants maintain that even if sufficient evidence exists to support the claims, they are entitled to qualified immunity. The Court addresses each argument below.

### A.   Exhaustion of Administrative Remedies

The Prisoner Litigation Reform Act ("PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted."   42 U.S.C. § 1997e.   Although exhaustion under §

1997e(a) is not a jurisdictional prerequisite, the plaintiff must nonetheless exhaust administrative

remedies before this Court will hear the claim.   *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007);

*Anderson v. XYZ Corr. Health Servs.*, 407 F.2d 674, 682 (4th Cir. 2005).   Because the Court may

not consider an unexhausted claim, exhaustion prior to federal suit is mandatory.   *Ross v. Blake*,

578 U.S. __, 136 S. Ct. 1850, 1857 (2016).   Therefore, a court ordinarily may not excuse a failure

to exhaust.   *Ross*, 136 S. Ct. at 1856 (*citing Miller v. French*, 530 U.S. 327, 337 (2000) (explaining

"[t]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion")).

Exhaustion requires an inmate to complete "the administrative review process in

accordance with the applicable procedural rules, including deadlines."   *Woodford v. Ngo*, 548 U.S.

81, 88, 933 (2006).   Importantly, however, the court must ensure that "any defects in exhaustion

were not procured from the action or inaction of prison officials."   *Aguilar-Avellaveda v. Terrell*,

478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Moreover, an inmate need only exhaust "available" remedies.   42 U.S.C. § 1997e(a); *see Ross*,

136 S. Ct. at 1855.   An administrative remedy is not "available" where the prisoner, "through no

fault of his own, was prevented from availing himself of it."   *Moore*, 517 F.3d at 725 (citing

*Aguilar-Avellaveda*, 478 F.3d at 1225); *Kaba*, 458 F.3d at 684.

Inmates in the custody of the Maryland Department of Public Safety and Correctional

Services ("DPSCS") may avail themselves of the administrative grievance process which is

designed for "inmate complaint resolution."   *See generally* Md. Code Ann. (2008 Repl. Vol.),

Corr. Servs. ("C.S."), §§ 10-201 *et seq*.; Md. Code Regs. ("COMAR") 12.07.01.01B(1) (defining

ARP).   If an ARP is filed and denied, the prisoner may appeal the denial within 30 days to the

Commissioner of Correction.   If the Commissioner of Correction denies the appeal, the prisoner

may file a grievance with the Inmate Grievance Office ("IGO"), also within 30 days.  C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B.  The prisoner must include in the grievance copies of the initial request or administrative remedy, the Warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response.  COMAR 12.07.01.04(B)(9)(a).  If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing.  C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B.  An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).

If a prisoner's failure to exhaust is apparent on the face of the Complaint, then dismissal is warranted.  *Anderson*, 407 F.3d at 682.  Where the Complaint does not clearly determine the issue, the court must examine material outside the pleadings and treat the motion as one for summary judgment.  *See* Fed. R. Civ. P. 12(b); *Gadsby by Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp. 2d 551, 556 (D. Md. 2003).

Defendants press the uncontroversial fact that Hanna had not "appealed" either of his ARPs to the IGO.  ECF Nos. 12-1 at 11; 12-15.  But Hanna had not appealed the ARPs to the IGO because each was procedurally dismissed by the prison, citing ongoing IID investigations.  ECF Nos. 14-3 (October 8, 2019 incident); 12-11 (October 28, 2020 incident).  Relevant Maryland regulations make clear that when an ARP is procedurally dismissed, the ARP is "complete" at the prison level and can be appealed only to the Commissioner of Correction.  *See* COMAR 12.02.28.11B(2)(d) (emphasis added).  Further, Hanna had not been advised that he maintained a right to appeal the dismissal of the ARPs.[3]  This alone creates serious cause for concern that the

---

[3] The ARP regarding the October 8, 2019 incident does not include the precise notification required by COMAR.  ECF No. 14-3.   Nevertheless, the response clearly states that the ARP was procedurally dismissed due to an IID investigation. *Id.*

appeals process had been thwarted through the prison's own insufficient procedures.  "Courts in this District have generally found that an IID investigation renders claims either exhausted or unavailable."  *Hinton v. Chronister*, No. CV GJH-19-334, 2021 WL 2207425, at *7 (D. Md. May 31, 2021).  *Hinton*, at *6 (citing *Stokes v. Davis*, No. CV JKB-16-3239, 2018 WL 656445, at *10 (D. Md. Feb. 1, 2018), *Toran v. Leply*, No. CV DKC-16-3731, 2017 WL 2645727, at *4 (D. Md. June 20, 2017), *Oakes v. Dep't of Pub. Safety*, No. CV GLR-14-2002, 2016 WL 6822470, at *5 (D. Md. Nov. 18, 2016), *Brightwell v. Hershberger*, No. CV DKC-11-3278, 2016 WL 4537766, at *9 (D. Md. Aug. 31, 2016)).  Thus, because Hanna's ARPs were procedurally dismissed due to ongoing IID investigations, the Court will not grant judgment in Defendants' favor on exhaustion grounds.

### B.  Eighth Amendment Excessive Force Claim

The Court proceeds to Hanna's Eighth Amendment excessive force claims.  An inmate may bring an Eighth Amendment challenge to a defendant officer's "unnecessary and wanton infliction of pain."  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). An inmate's Eighth Amendment claim involves a subjective and an objective component. "Specifically, Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered [by], or injury inflicted on, the inmate was sufficiently serious (objective component)."  *Iko v. Shreve*, 535 F. 3d 225, 238 (4th Cir. 2008) (*quoting Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)).

As to the objective component, an inmate must demonstrate his injury is sufficiently serious to rise above the level of de minimis harm. *Id.* at 238 (citing *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992)).  As to the subjective component, the inmate must show that the officer acted

"maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). Whether an officer "acted with wantonness" depends on "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Iko*, 535 F.3d at 239 (quoting *Whitley*, 475 U.S. at 321) (internal quotation marks omitted).

Defendants obliquely argue that "the record irrefutably demonstrates that the Plaintiff did not suffer an excessive use of force;" that "the force used against the Plaintiff was necessary to maintain order, and for the defendants to protect themselves from the assault by Plaintiff," and that medical records "prove conclusively that any physical contact used by the correctional officers was minimal and applied in a good faith effort to maintain order and discipline." ECF No. 12-1 at 22. When viewing the record evidence most favorably to Hanna, the Court must disagree.

The evidence regarding the October 8, 2019 incident reflects that Hanna and Peters had direct physical contact of such magnitude that Hanna suffered a concussion and other injuries to the head and face. ECF Nos. 14-2 at 3; 14-3; 12-4 at 11-12; 12-5 at 26, 28; 12-12 at 10. Peters admits that he "struck Inmate Hanna in the face and upper body," but offers no specific explanation as to the necessity of such force, especially considering that Hanna was naked and in a confined space. ECF Nos. 12-4 at 16; 12-5 at 23; 12-6 at 2. To be sure, each man maintains they were ambushed. ECF Nos. 14-2 and 12-6; 12-7 at 2. And no other officer on scene adds anything more to the evidentiary picture other than a "scuffle" had ensued. ECF Nos. 12-5 at 6, 27 and 29; 12-4 at 20. Accordingly, a reasonable factfinder could conclude that Hanna's injuries reflect the

officer's outsized use of force under the particular circumstances.  Thus, summary judgment as to Peters pertaining to the October 8, 2019 incident must be denied.

Likewise, the October 28, 2020 altercation involves Peters' strip searching a naked and vulnerable Hanna.  Although Defendants maintain that Hanna had been non-compliant and the aggressor (ECF Nos. 12-6, 12-8, 12-9, 12-10), Hanna strenuously attests otherwise.  ECF No. 14-2.  The record is further complicated by missing video footage which the prison itself viewed as sufficiently troubling that it had dismissed Hanna's rules violations as a result.  At this stage, it is a fair inference that the missing video would, as Hanna suggests, document when the officers entered his cell and provide other circumstantial evidence supporting that Hanna had not been the aggressor.  *Id*.  Accordingly, the Court cannot grant summary judgment on the excessive force claims leveled at Defendants Peters and Daniels for the October 28, 2020 incident.

### C.  Defendants Officers Kehr, Williams, Hill and "Doe"

For both incidents, Hanna names Officers Hill, Kehr, Williams, and an unidentified "Doe" as participants in the excessive force claims.  ECF No. 1 at 7.  The Complaint likewise avers that the same officers are subject to "bystander" liability failing to intervene.  ECF Nos. 1 at 4, 6; 12-2 at 2-3.  Although a cause of action exists where a law enforcement officer knowingly chooses not to prevent a fellow officer's violation of an individual's constitutional rights, *see Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 417 (4th 2014) (quoting, *Randall v. Prince George's Cnty.*, 302 F.3d 188, 203 (4th Cir. 2002)), nothing in the current record supports this or any other liability theory as to the named officers.  Accordingly, these officers are dismissed from the Complaint.  The Court recognizes, however, that the case is in its infancy, and that discovery will

proceed on the Eighth Amendment claims.  If formal discovery produces a sufficient factual predicate to support liability as to these officers, Hanna may seek leave to amend the Complaint.[4]

### D.  Denial of Due Process

The Court next turns to the due process claim as to Peters and Daniels. The claim is premised on the officers' submission of alleged false report which, according to Hanna, prompted his October 2020 transfer to NBCI, a high security facility.  ECF No. 1 at 7, 10-11.  This claim fails as a matter of law.  Even accepting as true that officers submitted "false" reports, Hanna does not enjoy a constitutional right to be housed at any particular facility or receive specific programming "so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976).  *See also Cole v. Pepper*, No. GJH-18-3097, 2019 WL 470295, at *7 (D. Md. Sept. 30, 2019).  Unless the claimed denial presents an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," no such cause of action shall lie.  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  *See also Prieto v. Clarke*, 780 F.3d 245, 250 (4th Cir. 2015).  Rather, the plaintiff must demonstrate the state's interest in avoiding "erroneous placement [in the challenged confinement] under the state's classification regulations *combined with* . . . harsh and atypical conditions" for Due Process protections to apply.  *Id*. (emphasis in original) (citing *Wilkinson v. Austin*, 545 U.S. 209, 224-45 (2005)).  Nothing in the

---

[4] The Complaint additionally suggests that Hill should be held liable for failing to supervise and discipline Peters for having beaten Hanna. ECF No. 1 at 6.  Supervisor liability attaches in the § 1983 context only where the supervising officer (1) "had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff," (2) "the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offense practices,'" and (3) "that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 206 (4th Cir. 2002) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). In making such a showing, a plaintiff bears a heavy burden.  *Shaw*, 13 F.3d at 799.  *See also Hulbert v. Pope*, 535 F. Supp. 3d 431, 452 (D. Md. 2021), *reconsideration denied*, No. CV SAG-18-00461, 2021 WL 4640668 (D. Md. Oct. 6, 2021).  Viewing the Complaint most favorably to Hanna, no facts make this claim plausible as to Hill.

record suggests that Hanna's placement at NCBI is sufficiently harsh or atypical necessary to sustain a due process violation.

More fundamentally, the record does not support that any such reports prompted the transfer. Hanna had been transferred to NCBI on the same day as the incident, the October 28, 2020. The reports generated in connection with this incident are dated October 28 and 30. ECF Nos. 1, 12-3, 12-10 at 25-30, raising the inference that the reports had nothing to do with the transfer. Indeed, no other evidence supports that Hanna had been transferred on account of supposed "false reports." Thus, summary judgment must be granted in Defendants' favor as to the due process claim.

### E.  Retaliation

The retaliation allegation fails for similar reasons. The Complaint alleges that the officers had filed false reports as retaliation for Hanna having filed ARPs concerning the October 8, 2019 and October 28, 2020 incidents. ECF No. 1 at 5, 10. No doubt, a prisoner enjoys a First Amendment right to petition for redress of grievances. *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 544 (4th Cir. 2017); *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978); *see also Hudson v. Palmer*, 468 U.S. 517, 523(1984) (recognizing First Amendment right to petition for redress of grievances). Where corrections officers retaliate against an inmate who exercises this right, a retaliation claim shall lie if the acts in question had been causally related to the inmate's protected activity. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). But when viewing the facts most favorably to Hanna, the uncontroverted evidence demonstrates that the reports in question predate his filing his ARPs. As to the first incident, Hanna filed his ARP four days after Peters submitted the notice of rule violation report. ECF No. 14-3. Likewise, Hanna had not filed the second ARP until after he had been transferred

to NCBI and after the second notice of rules violations had issued.  Thus, even assuming that Peters and Daniels filed such reports with less than pure motives, one such motive could not be in retaliation for Hanna petitioning for redress through the ARP process.  Summary judgment on this claim is granted.

### F.  Qualified Immunity

Defendants lastly contend that even if they had committed any of the alleged constitutional violations, they nonetheless enjoy qualified immunity requiring dismissal of the claims.  As to the only surviving allegations – excessive force as to Peters and Daniels – the Court cannot accord the protection of qualified immunity grounds as a matter of law.

Qualified immunity protects state actors from prosecution for violations of federal statutory or constitutional rights that had not been "clearly established" at the time of the alleged violations. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  For a right to be "clearly established," controlling authority or robust consensus of caselaw must "clearly prohibit the officer's conduct in the particular circumstances before him," *id.* at 589-590, with such certainty that the "statutory or constitutional question has been placed beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Contrary to the Defendants' assertions, an inmate's constitutional right to be free from unprovoked and unjustified beat downs while naked and confined is clearly established. *Hudson*, 503 U.S. at 6-7.  And though the officers here maintain that such force was warranted to restore and keep order, genuine disputes of material fact preclude that finding as a matter of law.  Put differently, if a rational trier of fact believes that the officers beat a naked and defenseless Hanna without any lawful grounds and with sufficient severity to cause serious head injury, then the officers necessarily violated Hanna's clearly established right to be free from excessive and wanton

15

infliction of pain.  Thus, the Court will not grant summary judgment on qualified immunity grounds.  After discovery, if warranted, Defendants may renew this argument.

## V.   Hanna's Motions

Because the Court will deny summary judgment on the Eighth Amendment excessive force claim as to Peters and Daniels, the matter will proceed to formal discovery on these allegations. Hanna is incarcerated, and so he is not equipped to prosecute his case without assistance.  The Court, therefore, grants Hanna's motion to appoint counsel.  Relatedly, the Court denies Hanna's motion for discovery as premature.  *See* Loc. R. 104.4.  Formal discovery shall begin with the issuance of a Scheduling Order, and counsel for Hanna shall handle all discovery matters on his behalf.  Lastly, the Court denies the motion for default judgment as no grounds exist for the requested relief.

## VI.   Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, will be GRANTED in part and DENIED in part.  Hanna's motion to appoint counsel will be GRANTED, and his Motion for Entry of Default will be DENIED.  A separate Order follows.

_____/S/_____
Paula Xinis
United States District Judge